and Covenant Educational Association. May the lawyers who are going to argue the case please approach and introduce yourselves. Good morning to all. Would you call the first case? Case number 10-1716, consolidated with 10-1777. Covenant Unit School District No. 17 v. Illinois Educational Labor Relations Board and Covenant Educational Association. May the lawyers who are going to argue the case please approach and introduce yourselves. Good morning to all. My name is Bonnie Meinroth, and I represent Covenant School District. My name is Elizabeth Reynolds, and I represent the Covenant Education Association. I'm Brian Barab, and I represent the Illinois Education Labor Relations Board. The appellate, you know you have 15 minutes. You have to reserve some time for rebuttal. You don't want us to stop you, so keep track of your time. Okay, let's proceed. Your Honor, since the association is both appellant and appellee, and then the ILRB obviously has its own position, would it be possible for us each to have 15 minutes of our own? No. I'm sorry, I should have said that. You should have said that. That's all right. Well, I didn't get a chance. No. Well, because Your Honor, I'm aligned with Mr. Munger. Well, we understand, but I want you to all understand that we have read your briefs, and we have a general idea what the case is about, and there will be no need for that type of time. Okay, let's proceed. May it please the Court. Your Honors, there are no disputed facts in this case. Therefore, this case is before the Court under a de novo standard of review. This case is strikingly similar to the Niles Township case, and the Court should follow its own precedent in the case before it and decide that, as a matter of law, the association failed to state a claim under the terms of the collective bargaining agreement when it attempted to challenge the non-renewal of a probationary teacher. Consistent with Niles, the Court must look to the four corners of the document to determine whether or not a claim has been stated. In this case, the association claimed the district violated Article 7 of the collective bargaining agreement because, quote, when it went to review materials which may have been used in determining a decision for non-renewal, found no evidence to support non-renewal. The association also claims in its grievance the district is precluded from maintaining any other file that may be used for discipline or non-renewal of Mr. Cox. What do they base that on? I'm sorry, Your Honor? What do they base that on? Judge? That position. That's the point. There is no contract language to base that conclusion on. Does there have to be? Yes, Your Honor. As a matter of law, to state an arbitrable claim, they must base their claim on specific contract language. Article 3.1 of the contract says that a grievance is a violation of the terms of the agreement. And so you're limited to looking at the language in the four corners of the document only. You cannot look at extraneous documents or other agreements between the parties. It's the four corners of the document. And in this case, there's no language in Article 7 that requires the school district to document reasons prior to non-renewal, to give reasons prior to non-renewal, or to use any documents in the personnel file before the Board of Education makes a decision which the statute vests in its exclusive authority, whether or not it wants to continue an employment relationship with this teacher or not. Teachers have no expectation of continued employment during their first four years of employment. And during the first three years of employment, the statute allows the Board to non-renew a probationary teacher for no reason or any reason at all. If they're a fourth-year teacher, the Board is required to give reasons. In this case, as a matter of law, based on what they claimed in their grievance, there is no violation of Article 7 that would state a claim that would be arbitrable. It even gets it's even less tenable when you look at the next violation of the contract that the association claimed. They claimed the district violated Article 13, the evaluation procedures. When you read Article 13, it simply requires that two members of the school board, two members of the association, meet one time a year to discuss the evaluation plan. The association claims that in their grievance, they claim that the district violated that section of the contract because it failed to document weaknesses in it's teacher's performance, failed to establish remediation plan, that it relied upon extra contractual procedures in deciding it's non-renewal, and failed to give irremediable reasons for it's non-renewal. But Article 13 is void of any evaluation procedures. In fact, interestingly, when you look at the Niles decision, and you look at the contract language referenced in Niles, Niles actually had evaluation procedures in their contract. This contract is completely void of any evaluation procedures at all. And so the association could not have stated as a matter of law, an arbitrable claim for a violation of Article 13. The labor board in it's decision erred in this case. The labor board's decision made a conclusion that the evaluation plan, which is a part of the contract, is inextricably linked to Article 13. But the definition of a grievance says it's a violation of the terms of this agreement. It doesn't say that it's a violation of this agreement and any documents that might be inextricably linked or related to the contract. And so as a matter of law, the association has failed to state an arbitrable claim for a violation of Article 13. And I believe that the analysis of this court's decision in Niles is consistent with our analysis of the facts in this case, and there is no arbitrable claim identified or stated by the association on the personnel file, Article 7, or the evaluation procedures, Article 13. Finally, the association claims that the district was required to have just cause to dismiss a non-tenured teacher. As we believe that the Illinois court decisions handed down in Midwest Central and in Lockport and in Rockford dispose of that argument. The courts have consistently held that as a matter of law, the school board has the exclusive right to non-renewal a non-tenured teacher under Article 2411 of the school code. Do they have to have any reason at all in your view? I'm sorry, Your Honor? Do they have to state any reason at all in your view? No, Your Honor. During the first three years of employment, no reasons have to be stated at all. The fourth year, the school district has to give reasons, but they don't have to be substantial reasons. And this case arose in your... I'm sorry, Your Honor? What year did this case arise in? This case? This case, yeah. This case arose... It was in the third year. Yes, Your Honor. He was finishing his third year. He was finishing his third year. Third year of probationary teaching service. In other words, his last year of probationary. It was not his last year of probationary service. Fourth year would have been? Yes. He would have had to have been employed one more year for him to be in his fourth year. He was completing his third year of probationary teaching service. Okay. But under the well-established precedence in Illinois, just cause standard does not apply to a board's decision to non-renewal. That was the argument that was raised in Midwest Central. It was the argument that the association raised in Lockport. And that it simply disposes of their argument. I would also note that non-renewal is not the same as discipline. Non-renewal does not require reasons. It doesn't have to be justified. There's no standard of proof. It's a function, a statutory function and right of the school board to decide an important decision. A decision is whether or not we want to continue our employment relationship with this teacher in a manner that would then put the teacher on tenure status. Contractual continued service. And that's the language they use in the statute. And I know that the association's argument is that 24-11 is void of any limitations. You know, under the Labor Act, the parties can enter into agreements to add to the statute. But frankly, that 24-11 and 24-12 have to be read together as one statute. You can't have... So a probationary teacher has no rights whatsoever? Your Honor, a probationary teacher has no expectation of continued employment from year to year until they finish their fourth full-time year of service in the school district. Once they finish four years of full-time service, they are automatically granted tenure by operation of law. The only way that the board can prevent a teacher from having tenure status is if the school district gives the teacher written notice at least 45 days before the end of the school term to notify the teacher that their employment will not be continued for the next year. And that is not a disciplinary action. That's simply a decision on the board as to what teacher do we want to continue in our employment. And it may very well be a mediocre teacher. It doesn't have to be a bad teacher. The school board has the discretion to decide, you know, this may be an average teacher, but we want to look for a teacher that is excellent. It's not an adverse employment action. I'm sorry, I'm not sure if I reserved any time. Yeah, you did. Alright, you did. Thank you. We'll give you a chance to respond. You need to share your time, folks. Yes, we will, Your Honor. May it please the court. I will do that, Your Honor, and what I would direct the court's attention to is the grievance and arbitration provision because that is the contract language that the court should look to to determine whether this claim is contractually arbitrable. Article 3.1 of the Collective Bargaining Agreement defines a grievance as quote, any claim that there has been a violation of the terms of this agreement. And Article 3.3 provides that if the association is not satisfied with the disposition of the grievance at Step 4, the association may submit the grievance to final and binding arbitration. That's the key language here. This contract, unlike the contract in Niles, does not have any language excluding any type of any of the contract's terms or any subject matter of the contract from arbitration. It's an extremely broad agreement in this particular contract. Now, in the Niles case, the contract specifically stated that grievance is challenging the non-renewal of a non-probationary teacher could only be processed through the grievance process as far as the school board level. In other words, not to arbitration. The contract in Niles specifically precluded arbitration of that particular type of grievance. And the majority in the Niles case, as your honors well know, interpreted the grievances in that particular case as challenging the decision to non-renew. So therefore, those particular grievances were excluded from arbitration by the expressed terms of the grievance procedure in that contract, which said that non-renewal grievances could only go up to the school board level. That is the key distinction between this case and Niles, I would submit. To the extent that the court in Niles then looked also at other provisions, such as the evaluation and personnel file provisions, there are differences here which I can address if the court would like me to, but the association submits that all the court needs to look at and should look at here is the grievance arbitration provision itself, because that's what determines what is subject to the party's agreement to arbitrate. And then the question of whether the grievance is a good grievance. So your position is that the school board, by signing that contract, agreed to subject their decision with respect to, say, first or second year teachers, to the grievance procedure? Because of the fact that they I would say yes, if there is a just cause grievance filed on behalf of a first or second year teacher. Mr. Munstroff's argument... What case do you think most supports your position? With respect to the contractual arbitrability or with respect to 10B, Your Honor? With respect to the right of this particular teacher to be included. Well, Your Honor... Well, Your Honor, we're not contending that this particular teacher is subject to the same provisions as tenured teachers, not by any means. But the contract does include this teacher in the grievance procedure, which is different from the procedural protections that a tenured teacher would receive. This case, of course, involves both the just cause grievance and the grievances relating to the evaluation process and the personnel file. With regard to just cause, the school code obviously does not require just cause for the non-renewal of a non-tenured teacher, but it also does not prohibit the parties from agreeing to a just cause review by an arbitrator as a supplement to any statutory rights, provided that the arbitrator does not award reinstatement. The school board has the statutory power to dismiss. We acknowledge that. But if the district chooses to agree to procedural protections or other protections such as just cause in its collective bargaining agreement, and then the school board does not abide by its agreement, then that violation may be subject to compensatory damages or another appropriate remedy from an arbitrator other than reinstatement. And I think a very illuminating case, by analogy to that point, is the Granite City case out of the Fourth District, which came out after Rockford and distinguished Rockford. The issue in Granite City was whether it was possible to arbitrate a one-day disciplinary suspension of a teacher, which the grievance alleged to be without just cause. And the court recognized that the school code gives school districts the power to suspend, but it also ruled that arbitrating the suspension for just cause would not conflict with the school code. And the court distinguished Rockford because with the suspension, unlike with a tenured teacher dismissal, there is no comprehensive statutory scheme for challenging the suspension. It's certainly up to a school district as to whether they want to agree to a just cause provision, but if they do agree, then the suspension may be arbitrated. And we would submit that the same is true for the non-renewal of a non-tenured teacher, subject to the limitation that reinstatement cannot be granted. Now, in the Niles case, the majority took the view that the portions of the grievance relating to evaluation and to personnel file were really nothing more than a tax on the non-renewal itself. I'd like to address that issue in this case because there are independent issues relating to the procedural violations alleged in this grievance. Obviously, there are connections to the non-renewal, but the non-renewal has a value and significance of their own, independent of the dismissal. And the court may ask, what harm was there to this teacher from the procedural violations that are alleged, as distinct from the non-renewal? Now, with regard to the evaluation plan, I'd just like to briefly address what Mr. Munstorf stated. The association contends that the evaluation plan is incorporated implicitly into the contract because the contract agrees that the parties will meet and submit any changes to the plan. Therefore, according to the association's view, the plan must be abided by unless it's been changed through that agreed-upon means in the contract. And it's up to the arbitrator to decide whether the association's reading of that contract provision is a good reading or not. But assuming for the moment that there has been a violation of the evaluation plan, the issue here for the teacher is there's an independent value to getting feedback, getting a rating, receiving a plan for improvement and recommendations from an experienced principal, because it helps that person improve as a teacher. And if the teacher has a contractual right to that and is denied that right, then the teacher is deprived of the opportunity to improve and correct any deficiencies. And that interferes potentially with the teacher's employability and earning power. With regard to the personnel file, basing a non-renewal on undisclosed material is a harm separate from the non-renewal itself. It's professionally harmful to a teacher not to know why the non-renewal decision was made. Is it based on some kind of perceived misconduct? The teacher needs to know that so that the teacher can try to correct that problem in the future. And it's harmful to the professional reputation to be dismissed without any explanation. It makes it impossible for the teacher to explain the non-renewal to prospective employers or to respond to any concerns that there may be. So those are independent harms for which an arbitrator could, if he finds they occurred, the arbitrator could reasonably award monetary damages as well as other types of relief other than reinstatement. And with that, I don't want to take any more time. Thank you, Your Honors. ...